CATTARAUGUS COUNTY.—HON. JOHN D. TELLER, SUR-ROGATE.—July, 1889.

MATTER OF HEDGER.

*In the matter of the judicial settlement of the account of* JOHN S. OGLISBIE *and* AUGUSTUS W. SPINNING, *surviving executors of* WILLIAM HEDGER, *deceased.*

Where the decedent left a large amount of real estate, and his personal property was small in amount, and it must have been understood by him that his personalty might probably be consumed in the payments of his debts, the funeral expenses, and in the use thereof by his wife

under the will, these facts make a case requiring the real estate to be charged with the legacies bequeathed under the will.

The testator, after giving the use of his property, real and personal, to his wife for life, gave two pecuniary legacies to certain of his children and grandchildren whom he named, to be equally divided among them, share and share alike, and the will further directed " Such devises and bequests are to take effect and such division of may estate is to be had after the decease of me said wife," the executors were authorized by the will, after the death of the wife to sell the real estate, and to divide the proceeds as directed. *Held,* that the interests of the legatees and devisees vested upon the death of the testator, subject to the life estate of his wife and the power of trust in executors to sell and divide the property; that none of the shares of the children who were legatees and devisees, lapsed upon the death of any of them subsequent to the death of the testator, but should be paid to their legal representatives.

THE facts appear in the opinion of the Surrogate.

TABER & BRAINERD, *attorneys for* J. S. OGLISBIE *and* AUGUSTUS W. SPINNING, *executors.*

VANDENBERG & SAXTON, *for* HARRIET HAMILTON, *an heir-at-law.*

FRED. STORKE, *special guardian of* MARK HEDGER *and* HARRY HEDGER, *infant children of* CHARLES H. HEDGER, *a deceased son of the testator.*

THE SURROGATE.—Questions have arisen upon this accounting as to the ownership of proceeds of real estate, which was sold by the executors. The determination of these questions involves a construction of the will of the decedent, dated September 1, 1873, and admitted to probate in this court on the 25th day of November, 1873.

The important clauses of the will are the following :

" *Second.* After the decease of my said wife, and at the time of the division of my property, as hereinafter mentioned, I give and bequeath to my grandson, Truman A. Hedger, of the State of Michigan, the sum of three hundred dollars."

" *Third.* At the time of the division of my estate as

aforesaid, I give and bequeath to my son, Charles H. Hedger, the sum of one hundred dollars, he having already had during my lifetime his proper share of my estate within this amount."

."*Fourth.* I give, devise and bequeath all of my real and personal estate of every kind and nature soever and wherever situated, except the above bequests, to my grandson, Truman A. Hedger, and my son, Charles H. Hedger, to my sons Thomas D. Hedger, William A. Hedger, my daughters, Harriet Cogswell, widow of Oscar Cogswell, Mary Bently, widow of Stephen L. Bently, and Margaret Maul, wife of George H. Maul, and my grandson, William O. Cogswell, to be divided equally between them, share and share alike. *Such devises and bequests are to take effect, and such division of my estates is to be had after the decease of my said wife, Jerusha Ann Hedger.*"

"*Fifth.* I hereby authorize and empower my executors, hereinafter named, to sell and convey my real estate, after the death of my said wife, as aforesaid, and to give, execute and deliver good and sufficient deed or deeds of conveyance therefor, dividing the proceeds thereof, as above directed, together with the proceeds of my personal property."

In the first clause of the will, the use of the real and personal property is given to the testator's widow for life, with the direction that the homestead remain the home of the family, during her lifetime. She died May 27, 1888. Harriet Cogswell, named in the will, has since its probate married David R. Hamilton, and is the contestant in this proceeding. Wil-

liam O. Cogswell, who was her son, died in 1879, intestate, leaving no wife or child.   Charles H. Hedger died in 1882, leaving a widow and three children. Thomas D. Hedger, a son of the testator, died after the death of his father, and before the decease of his mother.

The personal property, left by the testator, was in part used to pay debts and funeral expenses, and the balance was consumed by the widow.   Nothing but the proceeds of the real estate came to the hands of the surviving executors, whose accounts are now presented for settlement.

It is claimed by the contestant that the legacies or devises given by the fourth clause of the will, vested upon the death of the testator; while the executors contend that they did not vest until the death of the testator's widow, and, in consequence, that the shares of the persons who died in the interval have lapsed. The executors also claim that the legacies given in the second and third clauses of the will were liens upon the real estate, of which the testator died seised.

The legacies of Truman A. Hedger and Charles H. Hedger in the second and third clauses of the will, are directed to be paid after the decease of the testator's wife, and at the time of the division of his estate. The reason that Charles is to receive only one hundred dollars, is stated in the will to be that he had already had his proper share of the estate, except that amount.   In referring to the division of the estate, the testator treats his real and personal property alike.   The disposition of the remainder of the property is made without distinction between the real

and personal; and, for the purpose of a division, a power of sale of the real estate is given to the executors. These legacies are excepted from the general remainder, indicating that it was intended that they should be paid before the division of the residue of the real and personal property. No devise of real estate is made, except as a part of the residuum. The personal property left by the decedent was small in amount, and it must have been understood by him that the personalty was liable to be consumed in the payment of the debts and funeral expenses, and in the use thereof by his wife. The facts make a case requiring the real estate to be charged with these legacies. Briggs v. Carroll, 50 *Hun* 586; McCorn v. McCorn, 100 *N. Y.* 511; Scott v. Stebbins, 91 *N. Y.* 605; Hoyt v. Hoyt, 85 *N. Y.* 142; Brill v. Wright, 112 *N. Y.* 129.

A contention arises as to the time of the vesting of the legacies and devises contained in the second, third and fourth clauses of the will. There being no personal property, applicable to the legacies, they may be treated as payable exclusively from the avails of the real estate. By the fifth clause of the will, the executors are directed to sell the real estate after the death of the testator's wife, and to divide the proceeds as directed. From this provision and direction that such devises and bequests are to take effect and such division be had after the decease of said wife, contained in the fourth clause of the will, the counsel for the executors urged that the legacies and devises contained in the second, third and fourth clauses of the will did not vest until after the death of the widow,

and that Thomas D. Hedger, William O. Cogswell, and Charles H. Hedger, having died intermediate the death of the testator and his widow, the legacies or devises to them lapsed.

The rule upon which this view of the case is based is that where there is no gift but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives. The case of Warner v. Durant, 76 *N. Y.* 136, is cited as an authority. The case of Vincent v. Newhouse, 83 *N. Y.* 505, is also cited as sustaining the position that, where an executor is empowered to sell lands and divide the proceeds, the interests of the legatees do not vest until the time of the division. The court, in that case, quotes the language of the master of the rolls in Hoghton v. Whitgreave, 1 *Jacob & Walker, Ch. R.,* 145, which is : " Not only was there no bequest before the widow's death, but the subject matter did not then exist in the shape and form in which it was given." This authority has been frequently quoted by our highest court, without explanation. As the proposition referred to, if taken in the abstract, is misleading, it may be useful to call attention to some of these cases in connection with other decisions of the same court, bearing upon the question under consideration. The case of Hoghton v. Whitgreave was one in which there was a gift of real and personal property, after a life interest to the testator's widow, to trustees, to be converted into money, and divided among several persons named, *and the survivors or survivor of them.* The question involved was as to what time the survivor-

ship related.   The master of the rolls said : "Not only was there no bequest before the widow's death, but the subject matter did not till then exist, in the shape and form in which it was given.   It is given to those persons and the survivors or survivor of them, and seems to fall under the general rule that legacies given to *a class of persons,* vest in those who are capable of taking at the time of distribution.   Here he mentioned them *nominatim,* but he takes off the effect of that by adding the words " and the survivors or survivor."   He cannot mean to the survivors in his own lifetime . . . . . for the governing clause refers to the death of his wife, as the period when it is to operate.

The case of Brograve v. Winder, 2 *Vesey* 634, is similiar in principle, holding that, where the product of the sale of real estate is to be divided, after a life estate among certain persons, or their survivors, the interests thus given do not vest until the time appointed for the division.

The case of Vincent v. Newhouse, *supra,* was one in which the testator gave his wife certain lands for life, and directed that at her death, the lands should be sold by the executor and the proceeds be equally divided between his daughters who were living and the heirs of his deceased sons and daughters, share and share alike, *and* if either of the heirs above mentioned and intended should die, after the date of the will and before said sums were paid them, the share of the one so dying without issue shall be equally divided among the other heirs above named.   The will thus presents the case of a bequest of the proceeds of real

estate to certain persons, or in the case of the death of some of them, in the contingency of there being no issue, to their survivors.

In Warner v. Durant it was held that certain legacies vested at the time of the death of the testator, for the reason that it appeared to be the intention that the gifts should be severed *instanter* from the general estate. The testator had given moneys to his executors to keep and invest, and pay the income for five years, and at the end of that time to pay the principal in certain portions to certain relatives. The court holds that the severing of the gift for the benefit of the legatee, and in the meantime the payment of the interest to be made to him, is indicative of the intent of the testator that the legatee shall in all events have the principal, and is to wait only for payment, until the day fixed for distribution, for, as the court says, it is a general principle, that where the gift is absolute and the time of payment only postponed, time not being of the substance of the gift but relating only to the payment, does not suspend the gift but merely defers the payment. The case of Vanderpoel v. Loew *et al.*, 112 *N. Y.* 181, is similiar in principle.

In the case of Delaney v. McCormack, 88 *N. Y.* 183, it is said, as in Warner v. Durant, that, in a case where there is no gift or language imposing such gift, except in the direction to convert real estate into money, and then make distribution, the rule is settled that time is annexed to the substance of the gift, and the vesting is postponed. In that case, a future con-

dition or contingency attached to the substance of the gift.

In Smith v. Edwards, 88 *N. Y.* 92, it is said that, where the only gift is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift. But the court, in commenting on the cases holding this doctrine, says, they were instances in which the gift was conditioned upon an event to be determined in the future, and in such cases, until the happening of the future event, it must necessarily remain uncertain whether a gift would exist at all, and that could not be said to have vested which was not certainly given.

In Shipman v. Rollins *et al.*, 98 *N. Y.* 327, the broad rule that: " Where there is no gift, but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives," is quoted from the opinion in Warner v. Durant, as being applicable to the case in hand; but in that case, the gifts over after a life estate were in part to certain religious associations to be incorporated in the future, which fact it appears the testator knew.

There are numerous cases of legacies to certain persons or their survivors, or to classes of persons, in which an uncertainty existed as to whether the giver had in view a survivorship or class of persons in being at the time of his death, or at the time of the division of his property, or where a condition precedent has been attached to a gift, in which the principle here

invoked has been resorted to.   I am not able to find any case in which the rule laid down in Warner v. Durant has been applied where the gift of property, after an intermediate estate, has been unconditional and certain as to the objects of the bounty and directly ascertainable as to quantity, whereas the Supreme Court and the court of last resort in this state have held that, where the intention of the testator is definite as to the beneficiaries, under a will, and as to their shares of the property, a gift by a direction to executors to divide at a future time will vest in the beneficiary before the time of division arrives.   Williams v. Conrad, 30 *Barb.* 524 ; Ross v. Roberts, 2 *Hun* 90.   The last named case was affirmed by the Court of Appeals, 63 *N. Y.* 652.   Here a power of sale was given executors, to be executed upon the death of the testator's wife, when the proceeds were to be divided among his legatees.   It was held that the husband of the legatee, who died after the testator and before the widow, was entitled on the death of the widow to the legacy bequeathed to his wife, for the reason that the legacies became vested interests upon the death of the testator.   This case is parallel with the case at bar, except for the expressions in the latter, "such devises and bequests *are to take effect,* and such division of my estate is to be had, after the decease of my said wife ; " and the question arises whether the testator intended anything more by the words "to take effect" than that the legacies were to be paid at that time.   Unless the intention is unequivocally expressed to the contrary, it is the duty of the court to so interpret the expressions in a will

as to favor the vesting of estates rather than the opposite. The legatees and devisees, who would have had an immediate right to the possession of the property upon the ceasing of the precedent estate, were all in being and their shares ascertainable at the time of the testator's death; consequently their interests were vested. Moore v. Littel, 41 *N. Y.* 76; Hennessy v. Patterson, 85 *N. Y.* 91.

It was held by Surrogate BRADFORD, in the case of VanWyck v. Bloodgood, 1 Bradf. 154, that the point which determines the vesting or lapsing of a legacy given in future, is not whether time is annexed to the gift, but whether time is annexed to the substance of the gift. The mere circumstance that a gift is future does not make time of the substance of the gift. That is to be determined from the intention of the testator, as gathered from the whole will. By the substance of a gift is meant its comprehensive summary. To say that time is of the substance of the gift, is to say that the gift shall not be effectual unless the legatees shall be living or some other condition precedent be fulfilled at the time indicated. The postponement of the possession of a legacy imposes no condition as to its vesting. If *futurity* is annexed to the substance of the gift, the vesting is suspended, but, if it appears to relate to the time of payment only, the legacy vests *instanter*. Gilman v. Reddington, 24 *N. Y.* 9. In the case of Everitt v. Everitt, 29 *N. Y.* 39, Chief Justice DENIO, in making the foregoing citation, says: " The leading inquiry upon which the question of vesting or not vesting turns, is whether the gift is immediate and the time of pay-

ment, or of enjoyment, only postponed, or is future and contingent, depending upon the beneficiary arriving of age or surviving some other person, or the like."

In the case at bar, the testator has given his property to his children and grandchildren *nominatim* in shares which are ascertainable from the terms of the will; and I think it was his intention that their interests in the property should vest upon his death, subject to the life estate of his wife, and a power in trust in the executors to sell and divide the property: It follows that none of the shares of the children lapsed by the death of any of them, subsequent to the death of the testator. The legacies to the children who have died should be paid to their legal representatives.

A decree will be entered accordingly.